PICKETT (UNITED STATES v.). See Case No. 16,043.

PICKETT'S HEIRS (LEDGERWOOD v.). See Case No. 8,175.

PICO (SPARKS v.). See Case No. 13,211.

---

## Case No. 11,127.

### PICO v. UNITED STATES.

[Hoff. Land Cas. 116.] [1]

District Court, D. California. Dec. Term, 1855.

MEXICAN LAND GRANTS—FREMONT'S CASE.

This claim must be confirmed under the ruling of the supreme court in Fremont's Case [17 How. (58 U. S.) 542].

Claim for eleven leagues of land in Amador county, rejected by the board, and appealed by the claimant, Andres Pico.

Stanly & King, for appellant.
S. W. Inge, U. S. Atty., for appellees.

HOFFMAN, District Judge. The claim in this case is founded on a grant by Governor Alvarado to Teodocio Yorba on the eighth of May, 1840. The title of the present claimant is derived from the original grantee by deed dated October 4th, 1852.

The genuineness of the original is established by proof, but the only evidence that the grantee ever performed the conditions of the grant is contained in the depositions of Luis Arenas, Vicente P. Gomez and Antonio Castro taken in this court. By the testimony of the first of these witnesses it appears that the rancho in March or April, 1849, was occupied by both Pico and Yorba, and that they had cattle and a small house on the place. Vicente Gomez swears that he has known the rancho since 1848, and that at that time it was occupied by Pico and Yorba; that they had a log house upon it and cattle and horses. The witness Castro testifies sub-

---

[1] [Reported by Numa Hubert, Esq., and here reprinted by permission.]

stantially to the same facts. Neither of these witnesses states positively the reason why the land was not sooner occupied, but they all testify that at the time they mention, and as late as 1848, the Indians were very hostile. It also appears by the testimony of S. Vallejo that from 1840 to 1846 it was impossible to occupy the rancho without the continual presence of the soldiers; that the Indians held almost absolute possession of that part of the country, unless when repelled by a strong military force. Under the former views of this court, this claim would have been rejected; but the decision of the supreme court in the case of Fremont v. United States [17 How. (58 U. S.) 542] has laid down other rules for our guidance. The grant must, under the principles established in that case, be regarded as having given the grantee "a vested interest in the quantity of land therein specified." The only inquiry "is whether the right of the grantee was forfeited by breach of the conditions, and the title revested in the Mexican government." Fremont v. United States, 17 How. [58 U. S.] 560. If the interest which is adjudged to have vested in the grantee by the unconfirmed grant of the governor be the legal estate in the land, then the only right which could have passed to this government would be the right to declare and enforce a forfeiture which had accrued under the former government. If, then, by the judgment of the court, the legal title remaining in the grantee at the time of the acquisition of the country and undivested by any proceeding under the Mexican authority be declared to be forfeited, it would seem that the court is in effect asserting the "right of the United States by forfeiture for conditions broken to lands which had been once legally granted." The authority of the court to make such an inquiry or assert such a right seems to have been doubted in Sibbald's Case, 10 Pet. [35 U. S.] 321, and in other cases, nor is this court aware of any case in which that right has been recognized, unless the Case of Fremont be so regarded. It may, however, be considered that on the breach of the conditions, the title which had vested in the grantee reverted ipso facto to the government, without any judicial proceeding or other act on the part of the government manifesting its intention to take advantage of the forfeiture. In that case the legal estate in the land passed to our government by the treaty, and not the mere right to enforce a forfeiture. Whether such a consequence could have ensued from the mere breach of a condition subsequent, without an entry of the grantor or an office found, is not decided by the supreme court; but it would seem more in accordance with the principles which pervade every system of jurisprudence to treat the breach of such conditions as rendering the grant voidable rather than void, and especially where the grantor is a government which has no motive vigorously to enforce

such "clauses of nullity" or "penal clauses," and whose policy it is to regulate their effect by the discretion of the judge or other officer who enforces them, according to the circumstances of each case.

Under the Mexican system it appears that though a formal judicial inquisition was not invariably instituted to ascertain the forfeiture, yet where land was denounced the inquiry was made whether the forfeiture had occurred or not, and the excuses of the first grantee for nonperformance were heard, and if reasonable received. If then it be considered that the legal title vested in the grantee by virtue of his grant, and that it did not revest in the government by the breach of the conditions unless some proceeding were had to ascertain and declare the forfeiture, it would seem to follow that the title must remain in the grantee, unless the court has power to declare and enforce the right to a forfeiture which passed to the United States from the former government. That the supreme court did proceed to inquire whether or not there had been a forfeiture, is evident. On the supposition, therefore, that the legal title vested in the grantee by the original grant, the Case of Fremont would seem to be an authority for the position, that in the California grants the court has a right to inquire into and enforce a forfeiture which accrued under the Mexican government of lands legally granted. But the interest which vested in the grantee may have been deemed by the supreme court merely an equitable interest, not constituting the legal title but entitling the grantee to a legal title from this government, or giving him a right of property in the land, which we are bound to respect.

This equity the supreme court apparently regard as perfect, unless the omissions of the grantee to perform had been such as by the Mexican laws and usages would have induced the government to have regranted the land as vacant or forfeited. Under this view the inquiry to be made in these cases would seem to be identical with that made on a denouncement under the Mexican system. The same and no other grounds of forfeiture should be investigated and the same excuses received. The benignant generosity of such a principle, so worthy of a great nation dealing with the rights of a conquered people, all must appreciate. If it was not adopted by this court, it was because it was considered that the only equity which could be judicially regarded in these cases arose, not from the grant of the governor alone, but from the grant and the subsequent performance of the conditions as required in the grant or cyprès, and that in the case of imperfect or incomplete titles, such as unconfirmed grants were deemed to be, it was considered that under the altered condition of the country, the enormously increased value of lands, and the radical change in the policy of the government with regard to its public domain, the

grantee who had neither obtained a complete title or performed the conditions had no right to demand that the indulgence should be shown by us which the former government, during its existence, had no motive to refuse, but which if it had continued it would not probably, under the present circumstances, have extended to this class of claimants. Perfect or confirmed grants were supposed to stand on a different footing; with regard to them it was considered by this court that a forfeiture could only be declared, if at all, under the same circumstances as by Mexican laws and usages would have authorized a regrant of the land on a denouncement. But whatever view may be taken of these questions, the duty of this court is clear. Following then, as I am bound to do, the course of inquiry upon the result of which the determination of these cases has been adjudged on this point to depend, the only question is "whether there has been any unreasonable delay or want of effort on the part of the grantee to fulfill the conditions, so as to justify the presumption that the grantee had abandoned his claim before the Mexican power ceased to exist, and is now endeavoring to resume it from its enhanced value."

This question is widely different from that upon the determination of which the validity of grants unconfirmed by the departmental assembly had been by this court supposed to depend. It had been considered by this court that until the grant received the approbation of the assembly, the concession by the governor passed only an imperfect or inchoate title. That the grantee who had under the former government fulfilled the conditions, and by occupying and cultivating the land rendered the only consideration contemplated by its policy and laws, had an equitable right to have his title perfected, and that that equity was binding upon the conscience of this as well as the former government. But it was the opinion of this court that where the grantee had omitted to fulfill these conditions, or was prevented by obstacles which existed and were known to him when he undertook the implied and sometimes express obligation to occupy and cultivate the land, he had no claim upon this government to recognize the imperfect title he had obtained from the governor. It was not of course supposed by this court that these concessions by the governor were identical with the permissions to occupy or to have a survey made, which were given in Louisiana and Florida. But it was considered that the regulations of 1828 expressly required the approval of the assembly to give definitive validity to the grant, and that until that was obtained the title of the person to whom the governor had determined to concede remained imperfect or inchoate, and that his equitable claim upon this government to respect or complete it must be founded on the fact of his having fulfilled the conditions or rendered the equiv-alent required by the Mexican law. Under this view it was thought that the Louisiana and Florida cases bore a close analogy to those in this state, and that the decisions of the supreme court with regard to the former furnished a guide and imposed a rule as to the latter. Some confirmation of these views might seem to be afforded by the record in this case, for the witness called by the claimants to prove the usages of the former government states that when his lands were denounced for the nonperformance of the conditions, he assigned as an excuse that possession had not been taken because the grant required the approval of the assembly, that this excuse was received by the government, and that six months longer was allowed for the fulfillment of the conditions. But these views, formerly taken by this court, have been by the judgment of our highest tribunal decided to be erroneous, and it now becomes our duty to ascertain and obey the rules of decision which that venerated authority has laid down. In the Case of Fremont it is decided that by the grant of the governor the grantee acquired a vested interest in the land, and that the question is "whether anything done or omitted to be done by the grantee, during the existence of the Mexican government in California, forfeited the interest he had acquired and revested it in the government." No denouncement or regrant of the land having been made under the former government, the court declares "that there is nothing in the language of the conditions, taking them altogether, nor in their evident object and policy, which would justify the court in declaring the land forfeited to the government where no other person sought to appropriate it, and their performance had not been unreasonably delayed."

In the case at bar there seems to have been neither any formal inquest to ascertain and declare the forfeiture, nor any regrant of the land to a subsequent applicant, and the reasons which it is said by the supreme court, in the case so often cited, would justify them in declaring the land to be forfeited, do not seem to exist. The delay seems to have arisen from the same causes, and to be excusable on the same grounds as those urged in Fremont's Case; nor do I discover any evidence justifying the presumption of a final abandonment of his grant by the grantee.

We, therefore, think that this claim ought not to be rejected for the nonperformance of the conditions.

This title was also held to be invalid by the board by reason of the insufficiency of the description of the granted land. On this subject it is enough to say that this objection is already disposed of by the Case of Fremont. The grant in that case "was held to convey a vested interest in the quantity of land mentioned in the grant, to be afterwards laid off by official authority in the territory described." The exterior limits in that case embraced one hundred square leagues—

the grant was for ten square leagues. In this case the exterior limits embrace about fifty square leagues, while the quantity granted is limited to eleven. ·The cases seem to be identical, and the objection under that decision cannot be maintained.

The above are the only grounds assigned by the board for rejecting this claim.

The case has been submitted without argument on the part of the United States, or the suggestion of any other objections to its validity. In its examination and decision I have felt an anxious desire correctly to understand and apply the principles laid down for our guidance by the supreme court, and if I have in any respect misconstrued or misapplied their decision, the error has been involuntary.

## Case No. 11,128.

### PICO et al. v. UNITED STATES.

[Hoff. Land Cas. 142.] 1

District Court, D. California. June Term, 1856.

MEXICAN LAND GRANTS—FREMONT'S CASE.

Entitled to confirmation under the ruling of the supreme court in Fremont's Case [17 How. (58 U. S.) 542].